NORTH CAROLINA

GUILFORD COUNTY

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
24 CVS __
24CV014244-400

Orrick R. Quick )
)
    Plaintiff, )
)
vs. )
)
Get Air High Point, LLC, )
Get Air, LLC, )
Trampoline Parks, LLC, )
Get Air Management, Inc., )
Trampoline Park Consulting, LLC, )
Val R. Iverson, Alan McEwan Jr. )
and Jacob S. Goodell )
)
    Defendants. )

COMPLAINT
(Jury Trial Demanded)

Plaintiff complaining of Defendants alleges and says:

1.    Plaintiff Orrick R. Quick (hereinafter "Plaintiff") is a citizen and resident of Guilford County, North Carolina. Plaintiff is greater than eighteen years old, and is competent to prosecute this action.

2.    Defendant Get Air High Point, LLC is a limited liability company organized and existing under the laws of the State of North Carolina with its principal place of business in Guilford County. ("Get Air High Point").

3.    Defendant Get Air, LLC is a limited liability company organized and existing under the laws of the State of Arizona with its principal place of business in Arizona, and also doing business throughout North Carolina, including Guilford County.

4.    Defendant Trampoline Parks, LLC is a limited liability company organized and existing under the laws of the State of Arizona with its principal place of business in Arizona, and also doing business throughout North Carolina, including Guilford County.

5.    Defendant Get Air Management, Inc. is a corporation organized and existing under the laws of the State of Arizona with its principal place of business in Arizona, and also doing business throughout North Carolina, including Guilford County.

6.    Defendant Trampoline Park Consulting, LLC is a limited liability company organized and

existing under the laws of the State of Arizona with its principal place of business in Arizona, and also doing business throughout North Carolina, including Guilford County.

7. At all times herein in question Defendants owned and operated a trampoline park located at 1116 Eastchester Drive #119, High Point, NC 27265.

8. At all times herein in question Defendants owned and/or exercised dominion and control over the premises on which the business is operated.

9. VAL R. IVERSON, at all relevant times, was a resident of the state of Arizona.

10. ALAN R. MCEWAN JR., at all relevant times, was a resident of the state of Arizona.

11. JACOB S. GOODELL, at all relevant times, was a resident of the state of Arizona.

12. The term "Get Air Venture" used herein is meant to include the business activities of all or some of the named defendants.

13. The Get Air Venture involves, but is not limited to, installing and managing indoor trampoline parks around the country with plans to expand the business model.

14. The individuals involved with the Get Air Venture use several business entities as instrumentalities to accomplish their goals, including all or some of the named defendants.

15. All defendants identified as corporations or other entities (i.e. business enterprises) were at all times herein acting by and through their officers, employees ,agents , and/or contractors (including all identified individuals referenced herein), who were acting within the course and/or scope of their employment or relationship with said business entities, and within their authority, such that these business entities are bound by, and vicariously liable for, the conduct of their officers, agents, employees, representatives, and/or contractors. Such business entities are also directly liable for their own negligence, malfeasance, recklessness, and other tortuous conduct in the hiring, monitoring, and supervision of the officers, agents, employees ,representatives, and/or contractors whose conduct caused or contributed to the damages that give rise to this action.

16. Get Air High Point is a Get Air Venture indoor trampoline park/facility.

17. GET AIR, LLC, TRAMPOLINE PARKS, LLC, GET AIR MANAGEMENT, INC. and/or TRAMPOLINE PARK CONSULTING, LLC are the central managerial business entities of the Get Air Venture.

18. VAL R. IVERSON is the sole member of TRAMPOLINE PARKS, LLC.

19. JACOB S. GOODELL is the Registered Agent for all four managerial entities, GET AIR,

LLC, TRAMPOLINE PARKS, LLC, GET AIR MANAGEMENT, INC. and/or
TRAMPOLINE PARKS CONSULTING, LLC.

20. ALAN R. MCEWAN JR. is an Officer, the Vice President, and the Treasurer of GET
AIR MANAGEMENT, INC.

21. Defendants offer investors the opportunity to open their own Get Air custom indoor
trampoline park as part of an offered "program."

22. TRAMPOLINE PARKS, LLC is responsible for designing and installing the individual
trampoline parks.

23. TRAMPOLINE PARKS, LLC's website represents that "Trampoline Parks has a
reputation for cutting edge, customized parks with the highest level of safety;" that
"Safety is our #1 priority;" and that "Trampoline Parks is the safest
developer/manufacturer of customized turn-key trampoline parks in the world."

24. Defendants hire and train personnel, develop, establish, and set safety standards or
guidelines, manage waivers, construct websites, supervise compliance with Get Air
Venture policies, and provide other managerial services to the individual Get Air Venture
trampoline parks.

25. Defendants maintain control over the individual trampoline parks within the Get Air
Venture.

26. Most of the trampoline parks that Defendants manage do business under the "Get Air"
name and use the "Get Air" trademark and logo.

27. Upon information and belief, the owners of GET AIR, LLC, TRAMPOLINE PARKS,
LLC, GET AIR MANAGEMENT, INC. and TRAMPOLINE PARK CONSULTING,
LLC do not respect corporate formalities and fail to follow them.

28. The owners of GET AIR, LLC, TRAMPOLINE PARKS, LLC, GET AIR
MANAGEMENT, INC. and/or TRAMPOLINE PARK CONSULTING, LLC use the
entities interchangeably.

29. VAL R. IVERSON, ALAN MCEWAN JR., and JACOB S. GOODELL, in their
personal capacities, serve as members on multiple Get Air Venture entities.

30. "Get Air Management, LLC" is listed as the copyright owner on multiple Get Air
websites.

31. Upon information and belief, "Get Air Management, LLC" does not exist.

32. GET AIR, LLC, TRAMPOLINE PARKS, LLC, GET AIR MANAGEMENT, INC. and

TRAMPOLINE PARK CONSULTING, LLC are/is merely the alter ego of the individuals pursuing the Get Air Venture.

33. Failure to hold the entities and individuals in charge of the Get Air Venture responsible for the negligence in the design aspects and management of Get Air High Point would sanction a fraud and/or injustice.

34. The individual owners of GET AIR, LLC, TRAMPOLINE PARKS, LLC, GET AIR MANAGEMENT, INC. and/or TRAMPOLINE PARK CONSULTING, LLC are/is personally liable for the entities' malfeasance in design, management, and oversight of the Get Air High Point establishment.

35. Get Air High Point, is merely the alter egos of the individual members and owners.

36. All Defendants named or referenced herein, at all relevant times, were acting or acted in concert with respect to the allegations and damages claimed by Plaintiff in this action.

37. Upon information and belief, the defendants that obtained liability insurance for the Get Air High Point business maintained a policy on that business that was inadequate for the type of business and the risks it exposed the customers to, especially in light of the substandard supervision and management it provided, as alleged herein.

38. Upon information and belief, Defendants maintain liability insurance that is inadequate.

39. Upon information and belief, given the inherent danger and risk of severe and catastrophic injury posed by trampoline parks, especially in light of the substandard supervision and management they provided, the full extent of which Defendants knew but Plaintiff did not, Defendants' respective insurance policy limits were unreasonably low.

40. Upon information and belief, Get Air High Point's liability insurance policy represents an inadequate financial basis on which to operate this trampoline park, and thus, undercapitalization of a corporate entity.

41. Upon information and belief, Defendants' liability insurance policies represent an inadequate financial basis on which to operate a trampoline park, and thus, undercapitalization of the corporate entities.

42. Upon information and belief, the Defendants that own, operate, and/or manage Get Air High Point undercapitalized those businesses.

43. Upon information and belief, given his catastrophic injuries and damages, restricting Plaintiff to the limits of the Defendants' liability insurance policies would promote injustice.

44. Failure to hold GET AIR, LLC, TRAMPOLINE PARKS, LLC, GET AIR

MANAGEMENT, INC. and TRAMPOLINE PARK CONSULTING, LLC individual members and owners responsible for Get Air High Point's negligence would result in fraud and/or injustice.

45. The individual owners of Get Air High Point and the individuals within its management are personally liable for Get Air High Point's negligence.

46. On or about June 8, 2018, Plaintiff visited Defendants' trampoline park at 1116 Eastchester Drive #119, High Point, NC 27265.

47. Once Plaintiff entered the location Plaintiff was instructed to read and sign a waiver. No one explained the waiver to Plaintiff. There was also a tutorial/educational video playing on a screen in the background. No one was really paying attention to the video. No employee directed Plaintiff to watch the tutorial/educational video.

48. Plaintiff paid $48.00 for an hour of jump time for Plaintiff and Plaintiff's two young daughters. Plaintiff and Plaintiff's daughters walked up the ramp where they began to jump and play in the middle section. About 40-45 minutes into their jump time Plaintiff and Plaintiff's daughters were instructed by one of Defendants' employees to move to the back corner area due to more people coming into the location.

49. Plaintiff and his daughters followed instructions and moved to the designated area. Plaintiff and Plaintiff's daughters started to jump into the foam pit and Plaintiff was the first one to jump. As Plaintiff was jumping, the height of Plaintiff's jump continued to increase as Plaintiff built up to jump into the pit. On Plaintiff's last jump, Plaintiff landed on the area where it had less give and both of Plaintiff's knees snapped and Plaintiff felt a huge pop through out Plaintiff's whole body.

50. Plaintiff was briefly unconscious. When Plaintiff came to, Plaintiff realized that both of knees were bent and Plaintiff's feet were near Plaintiff's behind.

51. Plaintiff traveled via ambulance to High Point Regional Hospital. It was determined that both of Plaintiff's lower tendons in each leg were ruptured. As a result of the injury Plaintiff had to undergo surgery and have a bilateral patella tendon repair on Saturday, June 9, 2018.

52. Plaintiff had braces on both knees for a total of 12 weeks and was unable to bend his knees for 6 weeks.

53. Plaintiff was discharged from the hospital on Monday evening, June 11, 2018.

54. However, on Sunday, June 17th Plaintiff had to return back to the hospital due to Plaintiff having chest pains, shortness of breath and severe pain in Plaintiff's right side. The emergency room physicians ran multiple tests on Plaintiff and found that a blood clot developed in Plaintiff's right lung and right ankle. The blood clots were a result of the

surgery Plaintiff underwent due to his injury. Plaintiff was placed on a heparin drip along with various medications to assist due to Plaintiff being in excruciating pain from the blood clots. Plaintiff was again discharged from the hospital on Wednesday, June 20th.

55. Again on Thursday, June 21st Plaintiff was admitted back into the hospital. Early in the morning of June 21, 2018, Plaintiff began to experience sharp pains in the left side of Plaintiff's back and according to the doctors in the emergency room damage has been done to Plaintiff's left lung which stems from another clot that developed in Plaintiff's left lung.

56. Plaintiff's recovery was long and painful. He was required to keep his knees straight for six weeks. He had to wear braces on both knees for twelve weeks. Even after several years, his prognosis is guarded.

57. Plaintiff has always been athletic, and in fact has recently worked as a personal trainer approximately three days per week. He is robust physically, and his injuries were not a result of any frailty on his part. His injuries were a result of an improper surface, and its failure to cushion his contact with the same. This dangerous condition was not apparent to Plaintiff. However, Defendants did know that this condition existed, and failed to warn Plaintiff and/or remediate the problem.

58. At the date and time herein in question, Plaintiff was present on the premises of Defendants as an invitee.

59. Defendants had actual or constructive notice of the material factual allegations set forth below.

## COUNT ONE
### (Negligence)

60. Plaintiff restates and reavers the allegations of all Paragraphs as if fully set forth herein.

61. At all relevant times, Plaintiff held the status of business invitee as to Defendants.

62. Defendants owed a duty of care to invitees, such as Plaintiff, to reasonable inspect the equipment made available to paying customers for their entertainment, for disrepair, malfunction, excessive wear, proper design and specifications, or any other unreasonably dangerous conditions, and generally, to keep the equipment and facilities in proper repair, all toward the safety and protection of those individuals who Defendants invited onto its premises and who, by right, made use of said equipment.

63. At all relevant times, Plaintiff was rightfully making use of said equipment and was charged a fee for doing so.

64. Defendants breached their duty by failing to conduct a reasonable inspection of the

equipment required by law, and/or by failing to observe, detect, or find, upon reasonable inspection (if one was done), the disrepair, malfunction, inadequacy for its intended purpose, and/or other dangerous condition of said equipment (such as the foam blocks), and failing to warn Plaintiff of, or remedy, said disrepair, malfunction, and/or dangerous condition.

65. Defendants would have and should have discovered the disrepair, malfunction, inadequacy, or dangerous condition upon a reasonable inspection or reasonable research and understanding of available safety standards for such equipment, and was therefore on actual or constructive notice of said disrepair, malfunction, inadequacy, or dangerous condition.

66. Defendants were negligent at the time and place in question in the following aspects:

   a. Defendants were negligent in not providing a surface with more give;

   b. Defendant were negligent in combining the slanted area with a rigid surface;

   c. Defendants were negligent in allowing persons of adult height and weight to use said area;

   d. Defendants failed to keep and maintain the equipment in properly functioning order;

   e. Defendants failed to warn customers about the unsafe condition of which the Defendants knew or by reasonable inspection should have discovered;

   f. Defendants failed to make reasonable inspection of the equipment and correct unsafe conditions which such an inspection would have revealed;

   g. Defendants negligently failed to keep the business and equipment and all common areas therein fit for all foreseeable uses;

   h. Defendants were negligent in such other respects as may be shown in trial.

67. The aforesaid negligent acts and omissions of Defendants and its agents, servants, or employees at the business were a direct and proximate cause of said incident and of the subsequent personal injuries sustained by Plaintiff.

68. As a result of the aforesaid incident, Plaintiff sustained personal injuries which injuries required medical care and attention.

69. From the date of the aforesaid incident until the present date, Plaintiff experienced pain and suffering, all to his substantial damage.

70. To date, Plaintiff has incurred significant expenses for medical care and attention for treatment of his injuries. Said medical care has included multiple surgeries to treat Plaintiff's injuries. Plaintiff is further advised, informed, believes and so alleges that such injuries may require incurring additional medical expenses for further treatment thereof.

71. Plaintiff is further advised, informed, believes and so alleges, that as a direct result of these injuries, he has sustained permanent disabling injuries to his body.

72. As a result of this incident, Plaintiff has endured pain and suffering, and cannot engage in numerous physical activities that he was able to engage in prior to the accident.

73. As a result of the aforesaid injuries, pain, suffering, disability, permanent injury, and medical care and attention and loss of income, Plaintiff has been damaged by the negligence of Defendants in a sum in excess of $10,000.00.

### COUNT TWO
### (Negligent Design)

74. Plaintiff restates and reavers the allegations of all Paragraphs as if fully set forth herein.

75. One or more of the defendants designed and installed the indoor trampoline park, Get Air High Point.

76. Defendants had a duty to design and install a reasonably safe indoor trampoline park.

77. TRAMPOLINE PARKS, LLC represents that "Trampoline Parks has a reputation for cutting edge, customized parks with the highest level of safety;" that"Safety is our #1 priority;" and that "Trampoline Parks is the safest developer/manufacturer of customized turn-key trampoline parks in the world."

78. Defendants had a duty to use reasonable care in the design and manufacture of Get Air High Point.

79. Defendants breached their duty to use reasonable care in the design and manufacture of Get Air High Point.

80. Defendants breached their duty to use reasonable care in the design and manufacture of the transition from the trampoline to the foam pit on the feature Plaintiff was using when he was injured.

81. Defendants' breaches of their duty to use reasonable care proximately and actually caused Plaintiff's catastrophic injuries and damages, as referenced herein, and the extent of which will be proven to a jury at trial.

## COUNT THREE
### (Negligence in safety standards)

82. Plaintiff restates and reavers the allegations of all Paragraphs as if fully set forth herein.

83. In embarking on a business such as the Get Air Venture, Defendants had certain duties pertaining to safety rules, standards, and guidelines, so as to ensure the well being of the customers they solicited onto their premises.

84. Such duties included, but are not limited to, the responsibility to develop, set, implement, convey, and enforce said safety rules, standards, and guidelines.

85. Defendants failed to adequately develop and set such rules, standards, and guidelines, which amounted to a breach of duty.

86. Defendants failed to implement any such rules, standards, and guidelines, in part by failing to adequately train its employees at Get Air High Point on such matters, which amounted to a breach of duty.

87. Defendants failed to adequately convey any such rules, standards, and guidelines to its customers, such as Plaintiff, and failed to enforce any such rules, standards, and guidelines as to Plaintiff, which all amounts to a breach of duty.

88. Defendants' breach(es) of duty proximately caused Plaintiff's catastrophic injuries and damages, as referenced herein, the extent of which will be proven to a jury at trial.

## COUNT FOUR
### (Negligent Supervision)

89. Plaintiff restates and reavers the allegations of all Paragraphs as if fully set forth herein.

90. Defendants supervise individual parks that they design and build to ensure compliance with "Get Air" safety rules, standards, and guidelines.

91. Defendants had a duty to use reasonable care in overseeing and supervising Get Air High Point's implementation of "Get Air" safety rules, standards, and guidelines, if any.

92. Defendants did not use reasonable care in overseeing and supervising Get Air High Point's implementation of "Get Air" safety rules, standards, and guidelines, which amounts to a breach of duty.

93. Defendants breach of its duty proximately caused Plaintiff's catastrophic injuries and damages, as referenced herein, the extent of which will be proven to a jury at trial.

94. Defendants had a duty to oversee and supervise the customers of Get Air High Point, and

keep them safe through implementation of the aforementioned safety rules, standards, and guidelines, yet failed to do so in a reasonable and effective manner, specifically in Plaintiff's case, which amounts to a breach of duty.

95. Defendants' breach of its duty proximately caused Plaintiff's catastrophic injuries and damages, as referenced herein, the extent of which will be proven to a jury at trial.

### COUNT FIVE
### (Negligent hiring and training of personnel)

96. Plaintiff restates and reavers the allegations of all Paragraphs as if fully set forth herein.

97. Defendants hire and train personnel for individual Get Air entities, such as Get Air High Point.

98. Defendants hired, or oversaw the hiring of, personnel for Get Air High Point.

99. Defendants had a duty of reasonable care to hire personnel who would be able to understand, learn, and enforce the safety rules, standards, and guidelines to protect customers, and to train such personnel how to do so.

100. Defendants failed to use reasonable care in the hiring and training of Get Air High Point's personnel, such failure amounting to a breach of duty.

101. Defendants' breach of this duty proximately caused Plaintiff's catastrophic injuries and damages as referenced herein.

102. Defendants, especially those in managerial positions at Get Air High Point, had a duty to use reasonable care to ensure that the aforementioned safety rules, standards, and guidelines were relayed to personnel in an effective manner (as part of the training), and to ensure that the facility personnel relayed said safety information to the customers and enforced same.

103. Defendants failed to use reasonable care to ensure that the aforementioned safety rules, standards, and guidelines were relayed to personnel in an effective manner (as part of the training), and to ensure that the facility personnel relayed said safety information to the customers and enforced same, such failure amounting to a breach of duty.

104. Defendants' breach of its duty to use reasonable care in this regard proximately caused Plaintiff's catastrophic injuries and damages, as referenced herein.

105. Defendants had a duty to use reasonable care in the supervision and oversight of the customers' activities, such as those engaged in by Plaintiff.

106. Defendants' personnel failed to use reasonable care to properly supervise and oversee the activities of the Get Air High Point customers, such as Plaintiff, such failure amounting to a breach of duty.

107. Defendants' breach of its duty to use reasonable care in this regard proximately caused Plaintiff's catastrophic injuries and damages, as referenced herein.

## COUNT SIX
### (Piercing the Corporate Veil)

108. Plaintiff restates and reavers the allegations of all Paragraphs as if fully set forth herein.

109. The individual corporate defendants serve as the alter egos of the individual defendants involved in those corporate entities.

110. Recognizing the corporate form for the protections against legal liability of its individuals in this case would sanction fraud and/or promote injustice.

111. Plaintiff is entitled to recover damages from the individual defendants personally for the malfeasance of the individual corporate defendants.

## COUNT SEVEN
### (Punitive Damages)

112. Plaintiff restates and reavers the allegations of all Paragraphs as if fully set forth herein.

113. Defendants' actions, or failure to act, were especially egregious in that they acted to serve their own interests while having reason to know and consciously disregarding a substantial risk that their actions or omissions might significantly injure their customers, such as Plaintiff, or in that they consciously pursued a course of conduct knowing that it created a substantial risk of significant harm to others, such as Plaintiff.

114. By acting to serve their own interests while having reason to know and consciously disregarding a substantial risk that their actions or omissions might significantly injure their customers, or by consciously pursuing a course of conduct knowing that it created a substantial risk of significant harm to their customers, Defendants proximately caused Plaintiff's catastrophic injuries and damages, as referenced herein.

115. Defendants, therefore, are liable for punitive damages to Plaintiff, in addition to compensatory damages.

WHEREFORE, Plaintiff prays the Court:

1. That Plaintiff have and recover from Defendants a sum in excess of $25,000.00 with interest thereon as by law provided as damages by reason of his personal injuries, disability,

permanent injury, medical care and attention and pain and suffering and loss of income.

   2.  That Plaintiff have and recover from Defendants punitive damages.

   3.  That the costs of this action, including reasonable attorney fees, be taxed against Defendants.

   4.  For a trial by jury on all issues of fact.

   5.  For such and further relief that the courts may deem just and proper.


Respectfully submitted this the 20th day of June, 2024.


_____
Christopher D. Lane
Attorney for Plaintiff
3802-A Clemmons Road
Clemmons, NC 27012
Ph. 336 766-0229
Fax 336 766-9451
chrislanelaw@gmail.com

NORTH CAROLINA )
)
GUILFORD COUNTY )

**V E R I F I C A T I O N**

Orrick R. Quick, being first duly sworn, deposes and says:

That he is the Plaintiff in the above entitled cause of action; that he has read the foregoing

COMPLAINT and he knows the contents thereof; that the same are true according to his own

knowledge and belief, except as to those matters and things set out therein on information and

belief; and that as to those matters and things, he believes it to be true.

Plaintiff,

_____
Orrick R. Quick

Sworn to and subscribed before me

this the 13th day of June, 2024.

_____
Notary Public

My commission expires: 02|13|2029

```
Arielle Rodriquez
Notary Public
Forsyth County
North Carolina
My Commission Expires 2/13/2029
```